*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re JOINER/JONES, Minors.

UNPUBLISHED
June 25, 2019

No. 345359
Wayne Circuit Court
Family Division
LC No. 16-522425-NA

Before: BECKERING, P.J., and CAVANAGH and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent appeals by right the trial court's order terminating her parental rights to the minor children under MCL 712A.19b(3)(c)(*i*), (g), and (j). We affirm.

## I. JURISDICTION

Respondent first challenges the trial court's exercise of jurisdiction. The trial court took jurisdiction over the children pursuant to admissions made by respondent at a hearing. Respondent argues that her plea was invalid because it was not factually supported and was not knowingly made. Our Supreme Court has recently explained that a respondent does not engage in an impermissible collateral attack by challenging the trial court's exercise of jurisdiction at this time, because the dispositional phase is not a separate proceeding from the adjudicative phase. *In re Ferranti Minor*, ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 157907, slip op at pp 1-2, 15-22). Nevertheless, because respondent did not raise her challenges in a timely manner, we consider this issue not preserved for appeal, and thus, respondent must demonstrate a plain error that affected her substantial rights. *Id*. at ___ (slip op at pp 18, 22); *People v Carines*, 460 Mich 750, 762-764; 597 NW2d 130 (1999).

Respondent contends that her due process rights were violated because the trial court did not ensure that her plea was knowingly, understandingly, and voluntarily made, MCR 3.971(C)(1). We disagree. Respondent was represented by an attorney at the hearing. The court was informed by respondent's attorney and the petitioner that respondent would make admissions. The court then advised respondent of her rights as required under MCR 3.971(B), and asked respondent whether she understood each of the rights. Respondent affirmatively stated that she understood her rights. The court then asked respondent if anyone was "twisting your arm, threatening you, promising you things to get you to make admissions in this matter,"

-1-

and respondent answered, "No." Respondent, her attorney, and the petitioner had agreed upon the admissions that respondent would make. The agreed-upon admissions were stated to the court, and respondent's attorney further indicated that the parties had stipulated to the admissions.[1] Although respondent had some cognitive disabilities, during this case she was able to attend almost all of the visitations, participate in some of the services, maintain contact with the workers, and attend all the hearings. The mere fact that she had cognitive disabilities does not automatically support a conclusion that she could not make her plea knowingly, understandingly, and voluntarily. There was no evidence on the record to support such a conclusion; thus, respondent has not shown a plain error affecting her substantial rights.

Respondent next contends that the trial court erred in taking jurisdiction over her children because the court did not establish a factual basis to support a statutory ground for jurisdiction, MCR 3.971(C)(2). Again, we disagree. Medical records containing information concerning the children's injuries and failure to thrive were placed into the record, as were records pertaining to a prior termination of parental rights. Petitioner and respondent's attorney represented to the court that the medical records and respondent's admissions—which included that respondent's home was infested with cockroaches and had a foul odor—would provide a basis for the court to establish jurisdiction under MCL 712A.2. The court considered both the admissions and the medical records—which documented the children's failure to thrive, as well as suspected physical abuse based on cigarette burns and a broken humerus requiring surgical repair—and found there was a substantial risk of harm, MCL 712A.2(b)(1), and an unfit home, MCL 712A.2(b)(2), which established the court's jurisdiction, as well as grounds for termination. After review of the record, we conclude that respondent has also not shown plain error that affected her substantial rights in this regard.

## II. REASONABLE EFFORTS

Next, respondent contends that the trial court clearly erred in finding that the Department of Health and Human Services (DHHS) made reasonable efforts to modify respondent's service plan to accommodate her cognitive disability in order to reunite respondent with the children. In order to preserve a claim that the DHHS failed to make reasonable efforts to reunify the children and family, respondents must "object or indicate that the services provided to them were somehow inadequate[.]" *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "Any claim that the [DHHS] is violating the [Americans with Disabilities Act (ADA)] must be raised in a timely manner, however, so that any reasonable accommodations can be made." *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000). The time for asserting the need for accommodation in services is "either when a service plan is adopted or soon afterward." *Id*. At no time during this case did respondent's attorney claim before the court that the DHHS failed to make reasonable efforts to accommodate respondent's cognitive impairments. Therefore, this

---

[1] While respondent correctly argues that parties cannot stipulate to jurisdiction, *In re Toler*, 193 Mich App 474, 476; 484 NW2d 672 (1992), in this case the parties did not stipulate to jurisdiction; they stipulated to the admissions.

issue is not preserved and our review is limited to plain error affecting substantial rights. See *Carines*, 460 Mich at 762-764.

Whether reasonable efforts for reunification have been made is a factual finding by the trial court. This Court reviews for clear error a trial court's factual findings. MCR 3.977(K); *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). If a parent suffers from an ADA disability, the DHHS must make reasonable accommodations for that parent. *In re Hicks/Brown*, 500 Mich 79, 86; 893 NW2d 637 (2017). "[E]fforts at reunification cannot be reasonable under the Probate Code if the Department has failed to modify its standard procedures in ways that are reasonably necessary to accommodate a disability under the ADA." *Id*.

The record shows that the DHHS made reasonable efforts to provide respondent with services to accommodate her cognitive disability. However, respondent never demonstrated improvement in the critical areas of parenting and independent living. Respondent had serious parenting issues. In addition to the constant supervision needed during visitation to keep the children safe and the workers' attempts to try to redirect respondent in how to properly supervise and discipline her children as well as divide her time between them, respondent was provided with a parenting class, a special 12-week supporting parent program, and two parent partners to help her with her parenting skills. However, respondent could not retain or implement the parenting skills that were being taught. It was clear that she was not able to capably parent her children without constant assistance. Throughout the two years of this case, respondent's parenting skills did not improve, and she never progressed to unsupervised visitation. Respondent did not acknowledge or recognize her lack of parenting skills. She told the court that she believed she was "doing good" at the visits and that there were "no concerns."

Petitioner's responsibility to provide services is accompanied by a respondent's responsibility to attend and benefit from services. *In re Frey*, 297 Mich at 248. The DHHS found the ARC-Detroit program, which was a specialized program providing services to parents with cognitive impairments. However, when respondent went for the interview, she told the interviewer that she did not need their service, and therefore, she was not accepted into the program. Then the DHHS found the NSO-SPIN program, which also provided specialized services to parents with cognitive impairments. In order to be accepted into that program, respondent had to switch from her current provider to the Consumer Link Network, which required her to obtain a psychological evaluation from the Development Center. The DHHS had provided contact information and instructed respondent to set up an appointment. It took months for respondent to finally follow through. She did not start that program until February 2018, two months before the termination hearing. When asked at the termination hearing whether respondent should be given more time now that she was in the NSO-SPIN program, the worker stated that more time would not produce a better result because respondent needed constant assistance with parenting "24 hours, 7 days a week." Respondent had been provided with low income housing resources, applications to the Family Reunification program, assistance with finding shelters, and help with filling out applications. But she was not receptive to the help. She told the worker that she did not need help; she would do it herself and get back to the worker with the outcome. During this case, as the time arrived for a decision, the court transferred the case to the Active Efforts Docket to provide extra help to respondent. However, respondent failed to participate in some of the services and did not demonstrate any benefit from the services that had been provided. The record shows that respondent stopped participating in services. She

stopped attending her individual therapy; she stopped staying in contact with the workers and service providers; and she did not keep scheduled appointments or return phone calls. She was re-referred to IMH therapy. Respondent also refused offers to help her go to the Social Security office and transfer her SSI payments into her name and obtain necessary documents.

After review of the record, we conclude that the DHHS made reasonable efforts to accommodate respondent's cognitive impairment, but respondent did not have the capacity to comply with and benefit from those services. Respondent was not able to support herself on her SSI income alone. She could not find independent housing on that income. She did not have the capacity to find employment sufficient to supplement her SSI money to support herself and her children. But above all, she was unable to learn to parent adequately. The trial court did not clearly err in finding that the DHHS made reasonable efforts for reunification by providing respondent with services to accommodate her cognitive disability.

### III. STATUTORY GROUNDS

Next, respondent contends that the trial court clearly erred in finding that clear and convincing evidence supported the statutory grounds for termination because there was a reasonable likelihood that the conditions that led to the adjudication would be rectified within a reasonable time, and there was not clear and convincing evidence that the children would be harmed if returned to respondent's custody. We disagree.

On appeal from termination of parental rights proceedings, this Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K); *In re Gazella*, 264 Mich App 668, 672; 692 NW2d 708 (2005). Regard is to be given to the special opportunity of the trial court to judge the credibility of the witnesses who appear before it. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989), citing MCR 2.613(C). To terminate parental rights, the DHHS must establish by clear and convincing evidence the existence of at least one statutory ground for termination found in MCL 712A.19b(3). *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003).

Respondent's parental rights were terminated under MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide:

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.[2]

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

A parent's failure to comply with his or her service plan is evidence that the parent will not be able to provide a child with proper care and custody and that the child may be harmed if returned to the parent's home. *In re White*, 303 Mich App 701, 710-711; 846 NW2d 61 (2014). In *In re Gazella*, 264 Mich App at 676, the Court stated:

> [I]t is not enough to merely go through the motions; a parent must benefit from the services offered so that he or she can improve parenting skills to the point where the children would no longer be at risk in the parent's custody. In other words, it is necessary, but not sufficient, to physically comply with the terms of a parent/agency agreement or case service plan. For example, attending parenting classes, but learning nothing from them and, therefore, not changing one's harmful parenting behaviors, is of no benefit to the parent or child.

There was clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). The children were removed from respondent because respondent's 13-month-old daughter had suffered a non-accidental right humerus fracture and was also diagnosed with "failure to thrive," and her two-year-old son was found to be severely neglected, dirty, and with scars and lesions all over his body. Both children had been burned with cigarettes. The home was infested with roaches and was unclean. In addition, respondent had abandoned her older daughter to the maternal grandmother, whose parental rights to all of her children had been terminated.

One of the primary areas of concern at the termination hearing was respondent's inability and failure to obtain suitable housing, independent from her living-together partner who was the

---

[2] MCL 712A.19b(3)(g) has been amended, effective June 12, 2018. See 2018 PA 58. Under the amended version, the words, "without regard to intent," have been removed. The amended version reads: "The parent, although in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age." Here, the court made its findings regarding statutory grounds on April 18, 2018, prior to the amendment, although the order terminating parental rights was entered June 29, 2018, after the amendment went into effect.

legal father of one of the children and the putative father of another. His parental rights had been terminated due to the abuse of these children. Respondent knew that her children would never be safely returned to her as long as she continued to live with him. However, throughout the case, she continued to live with him. She claimed to have moved out of his house several times but refused to provide any addresses for the workers to check the living conditions. Her SSI payments were sent to her living-together partner and she never took the necessary steps to have those SSI payments legally registered in her name. It was clear that she was not able to leave her living-together partner and establish an independent home for her children. The night before the termination hearing, she had moved into the home of her sister. However, that was only a temporary situation because that home was already over-crowded with adults and children and respondent's children would not be placed there. Respondent had demonstrated for over two years that she was entirely dependent on this man and, based on her inability to leave him until the night before her termination hearing, the court believed she would return to his home.

Even more serious than her failure to establish an independent home for herself and the children was respondent's inability to parent her children appropriately. After over two years of services, it was clear that respondent did not have the capacity to benefit from the services. Respondent's reliance on the testimony of her second parent partner is misplaced. Having never seen more than the children hugging respondent when they were dropped off for the visit, the parent partner opined that respondent could appropriately parent her children and respond to a medical emergency for her children because respondent told her that she always took her children to the doctor and no one, not even her living-together partner, assisted her with that. However, the parent partner did not know that one of the allegations that brought the children into care was one the children's failure to thrive. In addition, it was clear that the court did not rely on the parent partner's testimony because respondent's recitation about taking the children to the doctor was not credible. Respondent did not know how to take the bus, could not drive, and depended on her living-together partner to drive her everywhere. In addition, early in this case, respondent admitted that she had missed multiple medical appointments for her daughter because her living-together partner did not want to be bothered with the child, who had club feet, and refused to take her to medical appointments. Respondent had demonstrated that she could not rectify the conditions that led to the adjudication and there was no evidence that she would be able to rectify them within a reasonable time considering the children's ages. Therefore, the trial court did not clearly err in finding clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

There was also clear and convincing evidence to support termination under MCL 712A.19b(3)(g). Respondent did not have the parenting skills, income, or independent housing needed to provide proper care and custody for her children. Although respondent had participated in many of the services, she did not demonstrate a benefit. In addition, respondent had refused to participate in some of the services, had not maintained communication with the service providers, and had missed appointments. After two years of services, it was clear that there was no reasonable expectation that respondent would be able to provide proper care and custody within a reasonable time considering the children's ages.

There was also evidence that the children were at risk of harm if returned to respondent's home. Under respondent's care, her daughter had a fractured arm; the children had cigarette burns on their bodies, and they were diagnosed with a failure to thrive. During the visitations,

-6-

respondent was unable to manage her three children. She was not able to focus on more than one child at a time. She had not been able to retain or implement any of the parenting skills that the service providers had tried to teach her. In addition, respondent was unable to separate herself from her living-together partner, who had abused the children, whose parental rights had been terminated, and who had total control of respondent's money. Therefore, the trial court did not clearly err in finding clear and convincing evidence to support termination under MCL 712A.19b(3)(j).

## IV. BEST INTERESTS

Finally, respondent argues that the trial court clearly erred in finding by a preponderance of the evidence that termination of her parental rights was in the best interests of the children. Again, we disagree.

Once the petitioner has established a statutory ground for termination by clear and convincing evidence, the trial court must find by a preponderance of the evidence that termination is in the children's best interests before it can order termination of parental rights. MCL 712A.19b(5); *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court reviews a trial court's decision regarding a child's best interests for clear error. *In re Laster*, 303 Mich App 485, 496; 845 NW2d 540 (2013).

MCL 712A.19b(5) provides:

If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.

The trial court must weigh the evidence available on the whole record in determining the child's best interests. *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000). In *In re Moss*, 301 Mich App at 88-89, the Court stated:

[O]nce a statutory ground for termination is established, i.e., the parent has been found unfit, the focus shifts to the child and the issue is whether parental rights *should* be terminated, not whether they *can* be terminated. Accordingly, at the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has. [(Emphasis in original).]

Here, the children had been in foster care for over two years at the time of the termination hearing. It was clear that respondent was not able to properly parent her children or provide for their proper care and custody. It was also clear that respondent would not be able to do so within a reasonable time because of her cognitive disabilities. The children were all together and stabilizing in a pre-adoptive home. The children needed permanency and stability. The trial

court did not clearly err in finding by a preponderance of the evidence that termination of respondent's parental rights was in the children's best interests.

Affirmed.

/s/ Jane M. Beckering
/s/ Mark J. Cavanagh
/s/ Amy Ronayne Krause